**2015 UT App 302**

# THE UTAH COURT OF APPEALS

JAMES C. PINGREE,
Appellee,
*v.*
RITA F. PINGREE,
Appellant.

Opinion
No. 20150227-CA
Filed December 21, 2015

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 114905416

Steve S. Christensen, Attorney for Appellant

Thomas J. Burns and Joshua D. Chandler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN concurred. SENIOR JUDGE RUSSELL W.
BENCH concurred in the result.[1]

ORME, Judge:

¶1      Rita F. Pingree (Mother) appeals the district court's order
denying her request to relocate with the parties' child (Child)
and ordering a conditional transfer of child custody. Because the
district court properly considered Child's best interests, and
because the parties bargained in the underlying divorce
proceeding for an arrangement in which Mother would remain
in Utah, we affirm.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

BACKGROUND

¶2 Mother and James C. Pingree (Father) were married in 2004, and in 2008, Child was born. Father filed for divorce in September 2011. In May 2012, while the divorce was still pending, Mother graduated from medical school at the University of Utah. Around that time, Mother sought a court order that would allow her to relocate with Child to North Carolina, where Mother hoped to begin a medical residency. A court-appointed custody evaluator was still in the process of completing her evaluation, so the evaluator submitted a letter to the district court opposing Mother's request to relocate. The district court ultimately denied the request.

¶3 The custody evaluator eventually finished her report, in which she recommended that the parties be awarded joint legal and physical custody. After negotiations, Father and Mother reached a settlement agreement incorporating this recommendation, which the district court approved. The settlement agreement also provided that Father would pay Mother monthly alimony for five and a half years, which was non-modifiable, "because [Mother] will [forgo] a residency in radiology." These provisions were all outlined in a divorce decree entered on June 19, 2014.

¶4 The following month, Mother again requested that she be allowed to relocate with Child, this time to Connecticut, for the purpose of beginning a medical residency. She did so by filing a petition to modify the parties' divorce decree. This petition was treated below as a motion to relocate and is the subject of the instant appeal. Father opposed the motion, and the matter was heard by a district court commissioner. The commissioner recommended that Mother's motion be denied because relocation was not in Child's best interest. Mother objected to the commissioner's recommendation, and the issue went before the assigned district court judge.

¶5 At a hearing on January 5, 2015, the district court heard testimony from Mother, offered in support of the motion, and received testimony and an updated custody evaluation report from the custody evaluator, offered by Father. The district court overruled Mother's objection and adopted the commissioner's recommendation, denying the motion to relocate and instead entering an order for a conditional change of custody. The order stated that Mother was free to move out of state, but that if she did, primary custody would shift to Father. Mother appeals, arguing that the district court erred in its analysis of Child's best interests, by not allowing a full evidentiary hearing, by deferring to the commissioner's recommendation, by failing to make findings of fact and conclusions of law, and by denying Mother and Child their due process rights.

ISSUE AND STANDARDS OF REVIEW

¶6 Despite Mother's focus on several alleged errors, we need only decide whether the district court erred in determining that relocation was not in Child's best interest and by ordering a conditional change in custody. We review the district court's interpretation of relevant statutes for correctness and its custody determinations for an abuse of discretion. *See Donnelly v. Donnelly*, 2013 UT App 84, ¶ 11, 301 P.3d 6; *Grindstaff v. Grindstaff*, 2010 UT App 261, ¶ 3, 241 P.3d 365.

ANALYSIS

I. Child's Best Interests

¶7 In all custody determinations, the district court's "primary focus must be on the best interests of the child." *Schindler v. Schindler*, 776 P.2d 84, 87 (Utah Ct. App. 1989). In this case, the district court's order could have been somewhat more explicit and detailed in its evaluation of Child's best interests.

We conclude, however, that the district court fulfilled its minimum obligations in determining the best interests of Child and thus did not abuse its discretion in concluding that if Mother insisted on relocating, a change in custody would be warranted.

A.     Requirements of Section 30-3-37

¶8     We begin by considering the requirements of the relocation statute. *See* Utah Code Ann. § 30-3-37 (LexisNexis Supp. 2015).

> In a hearing to review the notice of relocation, the court shall, in determining if the relocation of a custodial parent is in the best interest of the child, consider any other factors that the court considers relevant to the determination. If the court determines that relocation is not in the best interest of the child, and the custodial parent relocates, the court may order a change of custody.

*Id*. § 30-3-37(4). Thus, the district court was required to first determine whether relocating was in Child's best interest. Then, if the court determined that it was not, the court was permitted to order a change of custody if Mother relocated. *See id.*

B.     The District Court's Best-Interest Analysis

¶9     The district court expressly found "that it is not in [Child's] best interest to relocate away from her father." This finding was supported, in part, with the following analysis:

> I'm not going to disturb custody, a joint custody, a joint physical [custody] because one parent wants to leave and disrupt that, where the child has lived in Salt Lake her whole life. She has family. She has school. She has social contacts. She has continuity here and I'm not going to do it for four years and

then bring her back for four years, I'm not going to do it under [section] 30-3-37.

¶10 Mother argues that this constitutes "inadequate analysis" because "[t]he trial court focused on factors in [section] 30-3-37(5), which relate to the parents and not the child, in making its best interest determination." We disagree with Mother's criticism of the court's analysis,[2] and we note that these findings were further supported by the commissioner's analysis, given that the district court expressly "f[ound] no error on the part of the Commissioner and . . . adopt[ed] the reasoning set forth in the Commissioner's order." As this court has previously explained,

> it is not erroneous for a district court to adopt a commissioner's findings rather than making its own separate findings where its decision and reasoning do not differ from that of the

---

2. Mother spends a substantial portion of her brief arguing that it was error for the district court to consider the factors outlined in section 30-3-37(5) in its determination of whether relocation was in Child's best interest. *See* Utah Code Ann. § 30-3-37(5) (LexisNexis Supp. 2015). We agree that such a focus would have been erroneous, because that subsection specifically drives a court's consideration of parent-time and transportation costs "[i]f the court finds that the relocation is in the best interest of the child." *See id.* Here, however, the district court found that relocation was *not* in Child's best interest, so subsection (5) is irrelevant. Mother's argument on this point is unpersuasive in any event, because our review of the record makes it abundantly clear that the district court's best-interest analysis was not focused on subsection (5) factors and was, instead, properly focused on factors relevant to Child's current situation and the impact that relocation would have on Child.

commissioner. Where the district court does so, we will simply evaluate the commissioner's findings as though they were made by the district court.

*Veysey v. Veysey*, 2014 UT App 264, ¶ 17 n.5, 339 P.3d 131.

¶11 The commissioner made her recommendation with reference to rule "4-903 of the Utah Rules of Judicial Administration," which "outlines the provisions that custody evaluators should use in determining what is appropriate or [in the] best interest of a child." The commissioner determined that

> those provisions that are relevant here would be the issue of the relative strength of the child's bond with one or both of the prospective custodians, the general interest in continuing [a] previously determined custody arrangement where the child is happy and well-adjusted, the ability to provide personal rather than surrogate care and any other factors deemed important by the evaluator.

*See* Utah Code Jud. Admin. R. 4-903(5). One such "other factor" deemed important by the evaluator was "[Mother]'s ability and her willingness to co-parent with [Father]." As the evaluator explained, Mother's

> behavior demonstrated that she did not fully understand or accept the importance of that relationship as evidenced by her insistence in trying to limit [Father]'s parent time to the minimum statutory schedule, by her refusal to give [Father] the opportunity to care for [Child] when [Mother] was not available including while she was travelling out of town and by her ongoing insistence on her right to physically separate [Child] from [Father] for multiple years.

The district court's best-interest analysis focused on factors such as the importance of continuity in Child's family, school, and social relationships; the relative strength of Child's bond with each parent; the interest in continuing the present custody arrangement; and the ability of each parent to provide personal rather than surrogate care. The court, through its adoption of the commissioner's analysis, also found persuasive Mother's inability to understand or accept the importance of Child's relationship with Father. Then, after considering all of these factors, the district court determined that it was not in Child's best interest to relocate. We cannot see how this decision was in error, given the court's compliance with statutory requirements and Mother's failure to directly challenge any factual finding made by the district court, including those findings made by the commissioner and adopted by the court.

C.    The Conditional Change of Custody

¶12    We next consider Mother's argument that there was no "compelling reason to change custody."[3] Under section 30-3-37(4), if a court determines that relocation is not in a child's best interest, it then has authority to order a change in custody if a custodial parent chooses to relocate. *See* Utah Code Ann. § 30-3-37(4) (LexisNexis Supp. 2015). Notably, the statute does not require a separate analysis of whether such a change in custody would be in the child's best interest. Instead, such a conclusion is implicit in the initial best-interests analysis: if it is not in Child's

---

3. On its face, this argument is problematic. Mother's relocation to Connecticut, taking Child with her, would necessarily work a change in the joint physical custody arrangement agreed to by the parties and incorporated in the divorce decree. So the question is not *whether* to change the existing shared custody arrangement if Mother moves across the country but *how* to change custody in that event.

best interest to relocate, it is in her best interest to remain where she currently lives. And if Mother opts to relocate, the only way for Child to remain in Utah is with a change in custody.

¶13 After the district court concluded that relocating to Connecticut was not in Child's best interest, it went on to find that if Mother elected to relocate, "a change in custody would be required, with [Father] being awarded primary physical custody." Mother argues that the district court "made no finding that there were compelling circumstances justifying the change of custody." She cites *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491, for the proposition that a court must find compelling circumstances before ordering a change in custody when the child thrives under the current arrangement. But what Mother fails to mention is that *Hudema* was a case in which the mother had sole physical custody, the mother had already moved out of state, and the court was considering a petition to modify custody. *Id*. ¶¶ 3–4. A modification is premised on a finding of changed circumstances. *See id.* ¶ 22; Utah Code Ann. § 30-3-10.4(a) (LexisNexis 2013). If a court determines that circumstances have changed in a manner that justifies a modification of custody, the court then conducts a best-interests analysis. *See Hudema*, 1999 UT App 290, ¶ 22. This is markedly different from the process of evaluating relocation, where courts must begin with an inquiry into the child's best interests. *Compare id.*, *with* Utah Code Ann. § 30-3-37(4). This difference is logical, because a conditional change of custody ordered under section 30-3-37(4) is triggered only if a significant change necessarily occurs, namely, if a custodial parent elects to relocate despite a court's finding that relocation would not be in the child's best interest. And thus, findings regarding changed circumstances are unnecessary in such a case.

¶14 Mother has failed to carry her burden of persuasion on appeal because she challenges the conditional change of custody without primary focus on the applicable law. Because the district

court correctly applied section 30-3-37 by ordering a conditional change of custody only after it determined that relocation was not in Child's best interest, there was no error.

## II. The Parties' Settlement Agreement

¶15    There is a separate and nearly independent ground on which we affirm the district court's order. We have already explained that the district court fulfilled its obligations in evaluating Child's best interest. After doing so, the district court simply gave Mother a choice: if she relocates, custody will change; if she remains in Utah, it will not. And Mother fails to acknowledge that she bargained for this result. She agreed not to pursue an out-of-state residency in exchange for more than five years of non-modifiable alimony payments. Then, a month after reaching that agreement, she sought to move with Child so she could accept such a residency. Thus, the district court's order is entirely consistent with—indeed, it serves to enforce—a negotiated provision of the settlement agreement and divorce decree.[4]

---

4. We acknowledge that the parties do not include any significant analysis addressing this issue in their briefs on appeal. But Father, in his opposition below to Mother's request to relocate, made the argument that the motion should be denied because it was contrary to the terms agreed upon by the parties in the settlement agreement. We are entitled to *affirm* on any legitimate ground suggested in the record before us. *See, e.g., Pentalon Constr., Inc. v. Rymark Props., LLC*, 2015 UT App 29, ¶ 25, 344 P.3d 180 (explaining that appellate courts "may choose to affirm the judgment of the district court on any legal ground or theory apparent on the record," even when the ground or theory used is different from the ones relied on by the trial court or argued on appeal).

### III. Mother's Due Process Challenge

¶16 Mother argues that the district court denied her due process by not allowing certain evidence at the hearing.[5] It is true that after objecting to a commissioner's recommendation, "any party has the right . . . to present testimony and other evidence on genuine issues of material fact relevant to custody." *See* Utah R. Civ. P. 108(d)(3)(A). But Mother fails to identify any such issue before the court on which she had not been heard, and so she has not shown that the district court was under an obligation to receive additional evidence she proffered.

### IV. The Parent-Time Agreement

¶17 Finally, we note that this is the sort of circumstance that should have been contemplated and comprehensively dealt with in the parties' parenting plan—the key to any well-ordered joint custody arrangement. At the time of divorce, Mother had recently completed medical school, a fact of which both parties were well aware, and both parties understood that for Mother to become a practicing physician, she would need to complete a medical residency, just as Father had done as part of his own

---

5. The district court began the hearing by accepting evidence as if it were deciding a petition to modify. When it was pointed out that the hearing was actually intended to address a motion to relocate, the court concluded that it already had enough information to make a determination under section 30-3-37. To remedy its partial acceptance of evidence, it acknowledged that it should not have received the testimony of the evaluator and indicated that it instead would review the evaluator's testimony "only insofar as it's consistent with the Commissioner's order." The court also accepted Mother's proffer that she and her expert would have presented testimony indicating that it would be in Child's best interest to relocate with Mother.

training to become a practicing physician. At the time of the divorce, Mother had not succeeded in securing a residency in Utah,[6] and this issue was a point of negotiation for the parties. A well-drafted parenting plan should have anticipated these exact circumstances and provided for them. *Cf.* Utah Code Ann. § 30-3-10.9(1)(c), (2) (LexisNexis 2013) (explaining that one objective of a parenting plan is to "provide for the child's changing needs as the child grows and matures in a way that minimizes the need for future modifications to the parenting plan" and that a "parenting plan shall contain provisions for resolution of future disputes between the parents"). While the failure to address this situation in the parties' parenting plan does not affect the appeal in this case, we highlight this issue for the benefit of family-law practitioners, and hopefully to help avoid similar disputes in the future.

CONCLUSION

¶18     The relevant statute requires district courts to determine whether relocation is in a child's best interest. The district court did so here, considering a wide range of factors that were pertinent to the parties involved. It ultimately concluded that Child should not relocate to Connecticut, even if Mother chose to do so, and we see no error in that conclusion. Furthermore, the district court acted within its discretion in ordering a conditional change of custody after it determined that Child would be best served by remaining in Utah. This outcome is further supported by the parties' agreement, at the time of divorce, that Mother

---

6. This statement should not be taken as a negative reflection on Mother's credentials. Fine though Utah's hospitals with radiology residency programs undoubtedly are, the two residencies Mother was offered were at Duke University in North Carolina and Yale University in Connecticut.

would not pursue a medical residency out of state, in exchange for which she would receive substantial, non-modifiable alimony. Thus, Mother is left with a choice: She can leave circumstances as they were agreed upon at the time of divorce, staying in Utah and forgoing a residency if she cannot find one here, or she can elect to relocate, at which point the custody arrangement will change so that Child can remain in Utah. There was no error in the district court giving Mother this choice, difficult though it no doubt is for a parent who wants both to maximize her time with her child and to advance professionally.

¶19    Affirmed.

————————